## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION
## CIVIL ACTION NO. 1:23-CV-00098-GNS-HBB

BLENDA L.[1]                                                                    PLAINTIFF

VS.

MARTIN O'MALLEY, COMMISSIONER
SOCIAL SECURITY[2]                                                             DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND RECOMMENDATION

### BACKGROUND

Before the Court is the Complaint (DN 1) of Blenda L. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff and Defendant have filed a Fact and Law Summary with a supporting memorandum (DN 11, 13). Additionally, Plaintiff has filed a reply (DN 14).   For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and that judgment be **GRANTED** for the Commissioner.

Pursuant to General Order No. 2019-11 and 28 U.S.C. § 636(b)(1)(B), this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations.   By Order entered September 21, 2023 (DN 8), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1  Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

2  Martin O'Malley became the Commissioner of Social Security on December 20, 2023.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

FINDINGS OF FACT

On August 4, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 11, 183-85, 186-89).   Plaintiff alleged that she became disabled on August 1, 2015, as a result of diabetes, high blood pressure, high cholesterol, heart disease, leg neuropathy, 30% loss of use in the left arm, nerve damage in the wrist and neck, and heart blockages (Tr. 11, 64, 71, 210).   The application was denied initially on October 11, 2021, and upon reconsideration on December 6, 2021 (Tr. 11, 63, 70).[3]   On January 10, 2022, Plaintiff filed a written request for hearing (Tr. 11, 104-05).

On September 12, 2022, Administrative Law Judge William C. Zuber ("ALJ") conducted a telephone hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 11, 34).   Plaintiff and her non-attorney representative, Kristen Brown, participated by telephone (Id.).   Sabrina Singleton, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated December 19, 2022, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-19).   The ALJ noted that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020 (Tr. 13).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 1, 2015, the alleged onset date (Tr. 14).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: coronary artery disease ("CAD"); hypertension; degenerative joint disease ("DJD") of the left shoulder;

---

3 The ALJ indicates the application was denied initial on October 12, 2021, and upon reconsideration on December 7, 2021 (Tr. 11).   As the Disability Determination and Transmittal forms indicate October 11, 2021, and December 6, 2021 (Tr. 63, 70), the undersigned has used those dates.

degenerative disc disease ("DDD") of the cervical spine; diabetes mellitus; and neuropathy (Id.). The ALJ also determined that Plaintiff has the following "non-severe" impairments: gastroesophageal reflux disease ("GERD"); gastritis; duodenitis; and carpal tunnel syndrome ("CTS") (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she can frequently climb ramps/stairs; occasionally climb ladders, ropes, and scaffolds; tolerate occasional exposure to dangerous machinery and unprotected heights; and she can frequently use her non-dominant left upper extremity for pushing, pulling, reaching, handling, and fingering (Tr. 15).   Additionally, the ALJ determined that Plaintiff is capable of performing her past relevant work as a bill collector, as generally performed, as this work did not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 18).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 15, 2015, through December 31, 2020, the date last insured (Tr. 19).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 179-82).   The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton

v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d

680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y

of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when

a reasonable mind could accept the evidence as adequate to support the challenged conclusion,

even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting

Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a

case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in

evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d

524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the

ALJ's decision (Tr. 1-4).   At that point, the ALJ's decision became the final decision of the

Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality

of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the

evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C.

§ 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996);

Cotton, 2 F.3d at 695-96.

<u>The Commissioner's Sequential Evaluation Process</u>

The Social Security Act authorizes payment of Disability Insurance Benefits and

Supplemental Security Income to persons with disabilities.   42 U.S.C. § 401 *et seq.* (Title II

Disability Insurance Benefits).   The term "disability" is defined as an:

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520(a), 416.920(a).   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).   Here, the ALJ denied Plaintiff's claim at the fourth step.

C.   Plaintiff's Challenges to Finding No. 5

*1.   Arguments of the Parties*

Plaintiff challenges the ALJ's RFC determination by arguing it is not supported by substantial evidence and the ALJ committed legal error by failing to comply with 20 C.F.R. §§ 404.1520c and 404.1529 (DN 11; DN 11-1 PageID # 861).   First, Plaintiff takes issue with the ALJ's § 404.1520c evaluation of the administrative medical findings of the non-examining state agency medical consultant at the reconsideration level, Timothy Gregg, M.D. (DN 11-1 PageID

5

# 861, 868-72) (citing 20 C.F.R. § 404.1520c).   Plaintiff explains that the ALJ's evaluation does not discuss the supportability factor and fails to explain how the consistency factor led to the rejection of an environmental limitation—avoid even moderate exposure to hazards (machinery, heights, etc.) (Id. at PageID # 869-70).   Further, Plaintiff asserts that the ALJ was not qualified to reject Dr. Gregg's environmental limitation in the absence of a contrary medical opinion in the record (Id. at PageID # 870-71).   Next, Plaintiff contends that the ALJ failed to comply with 20 C.F.R. § 404.1529 in his analysis of Plaintiff's subjective allegations of limited use of her left arm, restrictions in use of both wrists, difficulty lifting, and problems standing for very long (Id. at PageID # 861, 873-77).

In response, Defendant acknowledges that the ALJ did not expressly discuss the supportability of the non-examining state agency physician's findings (DN 13 PageID # 884-85). But Defendant suggests that the omission is harmless because the ALJ in substance assessed the supportability and consistency of Dr. Gregg's findings and substantial evidence supports the ALJ's determination that the medical findings were persuasive (Id.) (quoting Tyrone H. v. Comm'r of Soc. Sec., No. 2:22-CV-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023)).   Next, Defendant disputes Plaintiff's assertion that the ALJ failed to provide a basis for rejecting Dr. Gregg's environmental restriction (Id. at PageID # 885-87).   Defendant contends that the ALJ incorporated Dr. Gregg's environmental limitation—avoid even moderate exposure to hazards (machinery, heights, etc.)—in the RFC determination but in doing so the ALJ utilized different terminology than Dr. Gregg—tolerate occasional exposure to dangerous machinery and unprotected heights—to articulate the limitation (Id. at PageID # 885-87) (citing Tr. 15, 74) (citing Bryson v. Comm'r of Soc. Sec., No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar.

29, 2022) (indicating that "an ALJ need not adopt a medical opinion verbatim, even if he found it persuasive.")).   Alternatively, Defendant suggests that any potential error concerning articulation of the environmental hazards limitation is harmless as Plaintiff's past relevant work as a bill collector, as generally performed, would not require Plaintiff to be around environmental hazards such as moving machinery and heights (Id. at PageID # 886-87).   Defendant acknowledges Plaintiff's contention that the ALJ as a lay person cannot interpret raw medical data to determine the RFC and responds by pointing out that Plaintiff fails to identify any raw medical data that the ALJ purportedly interpreted when making the RFC determination (Id. at PageID # 887-88). Defendant posits that the ALJ's assessment of Plaintiff's symptoms and limitations was properly articulated, supported by substantial evidence in the record, and comports with § 404.1529 (Id. at PageID # 888-93).

    In his reply, Plaintiff acknowledges Defendant's argument that an explanation of supportability and consistency are unnecessary here because the factors converge when the record before the ALJ is the same or similar to the record considered by the non-examining state agency medical consultant (DN 14 PageID # 895-96) (citing Tyrone H., 2023 WL 2623571, at *6). Plaintiff argues that § 404.1520c(c)(1) reflects otherwise because supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself (Id. at PageID # 896).   By contrast, § 404.1520c(c)(2) indicates that consistency is an external check that references evidence from other medical and nonmedical sources (Id.). Plaintiff contends that the regulations require Administrative Law Judges to "explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion" (Id.) (quoting Toni P. v. Kijakazi, No. 1:22-CV-00139-HBB, 2023 WL

5217802, at *4 (W.D. Ky. Aug. 14, 2023)).   Plaintiff asserts that the ALJ's failure to accurately adopt Dr. Gregg's environmental limitation—avoid even moderate exposure to hazards such as heights and machinery—in the RFC determination was not harmless because it would have excluded her from performing her past jobs as a bill collector (entailed operation of office equipment) and bus driver (required to check equipment and oil levels) and Rule 202.06 of the Medical-Vocational Guidelines would have directed a finding of disabled at step five (Id. at PageID # 896-97).   Concerning § 404.1529, Plaintiff argues that the ALJ's general reference to conservative treatment is not sufficient because the regulation requires the ALJ to evaluate Plaintiff's statements and consider whether there are inconsistencies in the evidence and the extent to which there are conflicts between Plaintiff's statements and the rest of the evidence (Id. at PageID # 897).   Plaintiff points out that once medically determinable impairments are established by objective medical evidence, the agency is obligated to determine whether the impairments "could reasonably be expected to produce the claimant's alleged symptoms" (Id. at PageID # 898) (quoting § 404.1529(c)(2)).   According to Plaintiff, the ALJ is then required to "point to actual inconsistencies between the testimony and the medical reports and to explain how the evidence led to a finding that Plaintiff's testimony should be rejected" (Id. at PageID # 898-99).

   2.   *Applicable Law*

   The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in

8

making the RFC determination Administrative Law Judges must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 11, 183-89).   *See* 20 C.F.R. § 404.1520c.   The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source.   20 C.F.R. § 404.1520c(a).[5]   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. § 404.1520c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. § 404.1520c(c)(1)-(5).[6]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R. § 404.1520c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the

---

4 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. § 404.1513a(a)(1).   Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. § 404.1513a(b)(1).

5 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v).

medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).   Notably, under the regulations

Administrative Law Judges "may, but are not required to, explain how" they considered the three

other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R.

§ 404.1520c(b)(2).

   *3.   Discussion*

   The undersigned will discuss the relevant portions of the ALJ's decision and respond to

Plaintiff's challenge.   In the context of assessing Plaintiff's RFC, the ALJ's discussion of the

evidence reads:

> The claimant alleges disability due to chronic joint and chest pain,
> diabetes, high blood pressure, high cholesterol, heart disease,
> neuropathy, nerve damage in her wrist and neck, and heart blockage.
> She alleges that she is limited to no more than unskilled, light
> exertional level work. (Exhibit 16E)   The claimant testified that her
> shoulder was frozen in 2021, but this is after the date last insured
> and not relevant to the period addressed in this decision.   The
> claimant testified that she has gastrointestinal issues from taking
> diabetes medication and has nerve damage in her neck and back,
> though she was focused more on her cardiac issues prior to the date
> last insured.   The claimant testified that she does not understand
> why the doctor wrote that she lives on a farm and is active with farm
> related duties.   She confirmed that she lives on a farm but stated her
> husband and daughter do the farm work.
>
> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record for the reasons
> explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not supported by the evidence of record for the relevant period.   The claimant received treatment for diabetes during the relevant period.   Her medication was continually adjusted, and records from 2017 note Metformin caused diarrhea. However, it appears she was still taking this medication in 2020. Her hemoglobin A1c level was 7.5 in March 2020.   While this is not at goal, there is no evidence showing it increased during the relevant period.   Gabapentin was prescribed for neuropathy in the lower extremities.   Records note she reported this medication worked well. (Exhibits 10F)   There is no indication in the medical evidence that the claimant required anything more than conservative treatment for her diabetes and neuropathy or that her neuropathy, when considered alone or with her other impairments, is disabling or results in any greater limitations than those set forth in the RFC above.

The claimant takes medication for hypertension and hyperlipidemia, which are noted as controlled despite some difficulties taking certain medications due to adverse side effects.   There is no indication in the medical evidence that the claimant required anything more than conservative treatment for her hypertension and hyperlipidemia and no evidence that these impairments, when considered alone or with her other impairments, are disabling or result in any greater limitations than those set forth in the RFC above. (Exhibit 10F)

The medical evidence shows this claimant had a stent placed in August 2015. (Exhibits 1F, 7F)   She continued to follow-up with her cardiologist for CAD.   Physical examination findings remained normal from 2016 to 2019 when she reported a return of chest discomfort, shortness of breath, intermittent lightheadedness, and fatigue.   She underwent a cardiac workup, including a heart catheterization and coronary angiography.   An EKG revealed PACs and PVCs.   Her medication was adjusted, and she underwent stenting of the right coronary artery, with successful PCI reducing stenosis to 0% from 95%. (Exhibits 1F, 10F)   There was no further abnormal findings or procedures during the relevant period.   Her cardiac treatment from 2021 and 2022 (Exhibits 4F, 9F) is not relevant to this finding, as this treatment was rendered after the claimant's date last insured.   While the claimant's CAD warrants a reduced RFC, there is nothing in the evidence from the relevant period to suggest light exertional level work would be precluded.

11

The claimant has also treated for back, neck, and upper and lower extremity pain. She received a Toradol injection for left shoulder pain in July 2017 due to pain and decreased range of motion after cleaning out her garage. She reported Ibuprofen was not helping her joint pain, so Mobic was prescribed. Her physical examination findings were normal from 2016-2020 with records noting she was pleasant and cooperative and giving no indication of any acute distress. Furthermore, records note she reported that she had a 9 acre farm and was very active working on the farm and gardening. She further reported that she is not a "sedentary" person (Exhibit 1F). She was involved in a motor vehicle accident in March 2020. Her workup was unremarkable except for bruising. (Exhibit 10F) Records from mid-2020 note complaints of bilateral upper extremity numbness and pain, right hip to the foot pain with burning and tingling, and left shoulder pain. Clinical findings include tenderness of the cervical spine and left shoulder, positive Tinel's at the carpal tunnel bilaterally, positive median nerve compression test, positive Spurling's on the left, decreased range of motion of the cervical spine and left shoulder, positive Neer's, positive Hawkin's, and a right limp. Imaging revealed DDD of the cervical spine with stenosis; arthritic changes of the right foot; and supraspinatus rotator cuff tear, AC joint arthritis with impingement, and labral tear. She received a cortisone injection in her left shoulder in September 2020 and underwent surgery of the left shoulder on November 2020. She also received physical therapy. She did well post-operatively through at least her date last insured. Though she experienced pain after this date, these records are not considered in this decision, as this treatment was rendered after the date last insured. (Exhibits 7F, 11F)

. . .

The claimant's husband completed a third party function report in November 2021, which is well after the date last insured, noting the claimant has significant limitations such that she relies on her family to complete even routine activities of daily living such as cooking. He notes that she cannot lift anything, drops things, and has to rest after climbing two stairs. (Exhibit 6E) While this report may reflect some limitations after the date last insured, the medical evidence does not support such limitations prior to the date last insured, as discussed in detail above, so this statement is not persuasive as of the relevant period.

12

Though this claimant has CAD, DDD, and DJD requiring stenting and left shoulder surgery, subsequent records prior to the date last insured note a normal stress test and failed to indicate any cardiac dysfunction. (Exhibit 4F)   She injured her left shoulder and neck in a motor vehicle accident leading to injective therapy and surgery on her left shoulder.   However, records note she recovered, though she testified that she later developed a frozen shoulder in 2021, which is after the date last insured and not relevant to this decision.   She takes medication for neuropathy and diabetes with records noting good relief of symptoms related to neuropathy but some ongoing uncontrolled diabetes with an elevated hemoglobin A1c level, though this would not have precluded work during the relevant period.   Records note that she was back to working on her farm by September 2021, though she denied this at the hearing.   Post hearing records note treatment for her shoulder and other conditions and are discussed above but are not of consequence.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the longitudinal evidence for the relevant period that shows treatment for CAD, left shoulder tear and DJD, cervical spine DDD, diabetes with neuropathy, hypertension, and hyperlipidemia. Though the claimant testified to ongoing issues after her date last insured, these are not relevant to the period addressed in this decision.   The medical evidence from 2015-December 2020 supports a light RFC with the limitations set forth above.

(Tr. 15-17, 18).   The ALJ accurately summarized Plaintiff's testimony as well as the medical and non-medical evidence of record.

The non-examining state agency medical and psychological consultants who reviewed the record and issued prior administrative medical findings are Jacqueline Fister, M.D. (initial review), Michelle D. Bornstein, Psy.D. (reconsideration review), and Timothy Gregg, M.D. (reconsideration review) (Tr. 17-18, 66-67, 72-75).[7]   The regulations required the ALJ to explain

---

[7] There are no medical opinions from treating or examining sources in the record.   Therefore, the ALJ's analysis is limited to the three prior administrative medical findings in the record (Tr. 17-18).

how both the supportability and consistency factors were considered when assessing the persuasiveness of their prior administrative medical findings.   *See* 20 C.F.R. § 404.1520c(b)(2).

The regulation directs that when evaluating supportability:

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1).   The regulation indicates that when evaluating consistency:

> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2).

The relevant portions of the ALJ's discussion concerning the prior administrative medical findings[8] read as follows:

> DDS physicians reviewed the case on two occasions.   While two post hearing exhibits were not available for their review, these records are of little or no relevance either being duplicates or after the date last insured.   On the first review in October 2021, Dr. Fister assessed a medium RFC with no more than frequent climbing ramps/stairs and no more than occasional climbing ladders/ropes/scaffolds and the need to avoid even moderate exposure to hazards. (Exhibit 2A)   This opinion is not persuasive, as the evidence shows treatment for CAD with stenting, DJD of the left shoulder, and DDD of the cervical spine, warranting a reduction of her RFC to the light exertional level.
>
> At the reconsideration level . . . in November 2021, Dr. Gregg assessed a light RFC with no more than frequent climbing ramps/stairs and no more than occasional climbing ladders/ropes/scaffolds and the need to avoid even moderate

---

8 Plaintiff does not take issue with the ALJ's persuasiveness assessment of Dr. Bornstein's prior administrative medical findings.   Therefore, that portion of the ALJ's discussion is not included in the block quotation (Tr. 17-18).

exposure to hazards. (Exhibit 4A) . . . Dr. Gregg's opinion is persuasive, as the evidence shows treatment for CAD, high blood pressure, diabetes, and chronic pain.   However, I have also included no more than frequent use her non-dominant left upper extremity for pushing, pulling, reaching, handling, and fingering to account for her left shoulder impairment.   This RFC is consistent with the claimant's clinical findings, course of treatment, and ability to work on her 9-acre farm and garden.

(Tr. 17-18).

As mentioned above, Plaintiff alleges that the ALJ's persuasiveness analysis failed to mention the supportability factor and did not explain why the consistency factor led him to reject the environmental limitation in Dr. Gregg's prior administrative medical findings.   The undersigned agrees with Plaintiff's former assertion but, for the reasons provided below, disagrees with the latter.   The ALJ's omission—failure to discuss the supportability factor—violated a procedural right accorded to Plaintiff under the regulation.   *See* 20 C.F.R. § 404.1520c(b)(2) ("Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."); Toni P. v. Kijakazi, No. 1:22-CV-00139-HBB, 2023 WL 5217802, at *4 (W.D. Ky. Aug. 14, 2023) (recognizing that 20 C.F.R. § 416.920c(b)(2) requires an explanation concerning how the supportability and consistency factors were considered in determining the persuasiveness of the medical opinion).

While the Sixth Circuit has yet to determine whether § 404.1520c(b)(2) confers a substantial procedural right, this court and sister courts within this Circuit have held that the regulation does because it creates an important procedural safeguard for claimants.   *See* Jada H. v. O'Malley, No. 3:22-CV-520-CRS-RSE, 2024 WL 659500, at *3 (W.D. Ky. Feb. 16, 2024); Hardy v. Comm'r of Soc. Sec., 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021); Gavre v. Comm'r of

Soc. Sec., No. 3:20-cv-00551-DJH, 2022 WL 1134293, at *6 (W.D. Ky. Jan. 3, 2022), *report and recommendation adopted*, 2022 WL 798035 (W.D. Ky. Mar. 15, 2022); Vaughn v. Comm'r of Soc. Sec., No. 20-CV-1119-TMP, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).   Where a regulation confers a substantial procedural right to claimants, a finding of harmless error will preclude remand.   Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004).

The Sixth Circuit has yet to articulate a harmless error test for procedural violations under § 404.1520c(b)(2).   It has, however, set forth a test for identifying harmless error for procedural violations under § 404.1527(c)(2), a regulation that applies to the evaluation of medical opinions for claims filed before March 27, 2017.[9]   *See* Cole v. Astrue, 661 F.3d 931, 940 (6th Cir. 2011); Wilson, 378 F.3d at 547.   Under this test, a violation of the procedural requirements in § 404.1527(c)(2) may qualify as harmless error if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 404.1527([c])(2) . . . even though she has not complied with the terms of the regulation.

Cole, 661 F.3d at 940 (citation omitted).   Since the adoption of § 404.1520c(b)(2), courts within the Circuit have utilized the above-mentioned requirements for identifying whether procedural violations under § 404.1520c(b)(2) may qualify as harmless error.[10]

---

9 Essentially, § 404.1527(c)(2) is § 404.1520c(b)(2)'s predecessor.

10 *See, e.g.,* Jada H. v. O'Malley, No. 3:22-CV-520-CRS-RSE, 2024 WL 659500, at *3-4 (W.D. Ky. Feb. 16, 2024); Demontra D. v. Kijakazi, No. 3:21-CV-00454-DJH-RSE, 2022 WL 4091969, at *3 (W.D. Ky. July 19, 2022), *report and recommendation adopted*, 2022 WL 4082479 (W.D. Ky. Sept. 6, 2022); Gavre v. Comm'r of Soc. Sec., No. 3:20-CV-00551-DJH, 2022 WL 1134293, at *6 (W.D. Ky. Jan. 3, 2022), *report and recommendation adopted*, 2022 WL 798035 (W.D. Ky. Mar. 15, 2022); Hardy v. Comm'r of Soc. Sec., 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021); Vaughn v. Comm'r of Soc. Sec., No. 20-CV-1119-TMP, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

16

Here, the Court is concerned with only the third requirement for finding harmless error. Under this requirement, the Court is reviewing the ALJ's decision to determine whether the ALJ met the goal of § 404.1520c(b)(2) even though he has not complied with the terms of the regulation.   For example, in <u>Vaughn</u>, the district court reviewed the ALJ's discussion of the claimant's medical history to determine whether the ALJ had achieved the regulation's goal of providing notice to the claimant as to why the opinion of the non-examining physician, was not persuasive.   2021 WL 3056108, at *12.   The district court observed that the opinion "was entirely predicated on a review of [the claimant's] medical history and, when recounting that same medical history, the ALJ identified several instances where [the claimant's] medical records did not support a finding of disability."   <u>Id.</u>   The district court found that "the ALJ's discussion of [the claimant's] medical history [was], in essence, a discussion of whether the evidence [the non-examining physician] reviewed could actually support his conclusions."   2021 WL 30561108, at *12.   The district court acknowledged that while this was not a direct attack on the supportability of the non-examining physician's opinion as contemplated by § 404.1520c(b)(2), the ALJ's opinion was "only one step removed from articulating why she believed the basis for [the non-examining physician's] opinion was faulty, i.e. an explanation of the supportability factor."   <u>Id.</u> The district court explained:

> Because the ALJ's decision on the whole gives the court a logical understanding of why she believed [the non-examining physician's] opinion lacked record support, the regulation's goal for the ALJ to "provide a coherent explanation of his or [her] reasoning" as to how persuasive a physician opinion is satisfied.

<u>Id.</u>   Therefore, the district court in <u>Vaughan</u> found that the ALJ's error was harmless and, as a result, a remand was not necessary.   <u>Id.</u>

17

The district court in <u>Tyrone H. v. Comm'r of Soc. Sec.</u>, implicitly applied the third requirement for finding harmless error when it utilized the analysis in <u>Vaughn</u> as a guide to reaching its harmless error conclusion.   No. 2:22-CV-3652, 2023 WL 263571, at *6-8 (S.D. Ohio Mar. 24, 2023).   The district court noted although the claimant characterizes the ALJ's discussion as addressing only consistency, the ALJ addressed "particular pieces of medical evidence upon which the [non-examining] state agency psychologists based their findings—the cornerstone of supportability."   <u>Id.</u> at 8.   Consequently, the district court in <u>Tyrone H.</u> determined that the ALJ's holistic review of the medical evidence of record—in substance if not explicit language—assessed the supportability and consistency of the state agency psychologists' prior administrative medical findings.   <u>Id.</u>

Here, the undersigned finds that the ALJ met the goal of § 404.1520c(b)(2) even though he has not complied explicitly with the terms of the regulation.   First, the ALJ's holistic review of the medical evidence of record in substance served as an assessment of the supportability of Dr. Gregg's prior administrative medical findings.   Next, in the context of discussing why Dr. Fister's prior administrative findings were not persuasive, the ALJ cited medical evidence—treatment for CAD with stenting, DJD of the left shoulder, and DDD of the cervical spine—that did not support Dr. Fister's medium exertional level RFC finding (Tr. 17).   Conversely, this very medical evidence supported Dr. Gregg's light exertional level RFC finding (<u>Id.</u>).   Additionally, Plaintiff's treatment for DJD of the left shoulder supported the ALJ's inclusion of the limitation "no more than frequent use her non-dominant left upper extremity for pushing, pulling, reaching, handling, and fingering to account for her left shoulder impairment" (Tr. 17-18).   Moreover, the goal of

§ 404.1520c(b)(2) was met because the ALJ expressly found Dr. Gregg's opinions "persuasive," and formulated an RFC in line with Dr. Gregg's opinions (Tr. 15, 17, 74).

Since the ALJ did not reject Dr. Gregg's environmental limitation, there is no basis to accuse him of committing a procedural error under § 404.1520c(b)(2).[11]   Specifically, Dr. Gregg opined "avoid even moderate exposure [to] hazards (machinery, heights, etc.)" (Tr. 74).   The ALJ expressly found this, and the other opinions articulated by Dr. Gregg, "persuasive" (Tr. 17).   But finding Dr. Gregg's environmental limitation persuasive does not require the ALJ to adopt it verbatim.   *See* Bryson v. Comm'r of Soc. Sec., No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022).   Specifically, the ALJ indicated Plaintiff could "tolerate occasional exposure to dangerous machinery and unprotected heights" in the RFC determination (Tr. 15). This language used by the ALJ expresses the substance of what Dr. Gregg opined.   Take for example Dr. Gregg's use of the phrase "avoid even moderate exposure" to indicate a level or degree of exposure that is less than or below "moderate."   The ALJ instead utilized the phrase "tolerate occasional exposure" to accomplish the same objective.   Next, Dr. Gregg used the phrase "hazards (machinery, heights, etc.)" to identify the types of environmental hazards to be avoided (Tr. 74).   The ALJ instead used the phrase "dangerous machinery and unprotected heights" to specify the types of environmental hazards to be avoided (Tr. 15).   Moreover, the ALJ's hypothetical question to the vocational expert included "tolerate occasional exposure to dangerous machinery or unprotected heights" (Tr. 57).   In response, the vocational expert testified that "the bill collector position could be performed as it is generally performed in the national economy"

---

11 Relatedly, Plaintiff asserts that the ALJ needed a contrary medical opinion in the record to support his decision to reject Dr. Gregg's environmental limitation because the ALJ is simply not qualified to interpret raw medical data in functional terms.   As the ALJ did not reject Dr. Gregg's environmental limitation, the Court need not address this claim.

19

(Tr. 58).   Thus, Plaintiff is not entitled to relief on her challenges to the ALJ's § 404.1520c evaluation of the administrative medical findings of Timothy Gregg, M.D.

Finally, there is no merit to Plaintiff's contention that the ALJ failed to comply with 20 C.F.R. § 404.1529 in his analysis of Plaintiff's subjective allegations of limited use of her left arm, restrictions in use of both wrists, difficulty lifting, and problems standing for very long.   In assessing Plaintiff's RFC, the ALJ considered her subjective allegations and made findings (Tr. 15-18).   *See* 20 C.F.R. § 404.1529; Social Security Ruling 16-3p.   Plaintiff's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   *See* 20 C.F.R. § 404.1529(a).   In determining whether Plaintiff suffered from debilitating pain and other symptoms, the ALJ appropriately applied a two-part test.   *See* Duncan v. Sec'y of Health & Hum. Servs., 801 F.2d 847, 853 (6th Cir. 1986).   The ALJ first examined whether there was objective medical evidence of the underlying medical conditions (Id.).   Having found that there was, the ALJ determined that the objectively established medical conditions were not of such severity that they can reasonably be expected to produce the alleged disabling pain and other symptoms.   Id. As the reported pain and other symptoms suggested impairments of greater severity than can be shown by the objective medical evidence, the ALJ considered other information and factors that may be relevant to the degree of pain and other symptoms alleged.   *See* 20 C.F.R. § 404.1529(c)(3).

For example, the ALJ considered Plaintiff's level of daily activity as a factor in determining the extent to which Plaintiff's reported pain and other symptoms are of disabling severity (Id.).

*See* § 20 C.F.R. § 404.1529(c)(3)(i); <u>Bogle v. Sullivan</u>, 998 F.2d 342, 348 (6th Cir. 1993); <u>Blacha v. Sec'y of Health & Hum. Servs.</u>, 927 F.2d 228, 231 (6th Cir. 1990).   Additionally, the ALJ considered whether there were any inconsistencies in the evidence, like reporting to her treating source that she was very active working on her nine-acre farm and gardening, and the extent to which there were any conflicts between Plaintiff's statements and the rest of the evidence of record (Tr. 17-18).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent she testified.   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the degree to which Plaintiff suffers from the pain and other symptoms.   Since tolerance of pain and other symptoms is a highly individualized matter, the conclusion of the ALJ, who had the opportunity to observe Plaintiff's demeanor, "should not be discarded lightly."   <u>Houston v. Sec'y of Health & Hum. Servs.</u>, 736 F.2d 365, 367 (6th Cir. 1984) (citing <u>Beavers v. Sec'y of Health, Educ. & Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978)).   The undersigned concludes that the ALJ's findings are supported by substantial evidence and fully comport with applicable law.   <u>See</u> 20 C.F.R. § 404.1529.

Conclusion

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ."   <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up).   Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).

21

Rather, the undersigned is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  Id.  After reviewing the record, the undersigned concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and comport with applicable law.   As such, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and that judgment be **GRANTED** for the Commissioner.

May 29, 2024

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.   Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.   If a party has objections, such objections must be timely filed, or further appeal is waived.   <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir. 1984), <u>aff'd</u>, 474 U.S. 140 (1985).

May 29, 2024

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

23